# Exhibit A

served by process server
8/1

| | SUMMONS |
|---|---|
| **Second Judicial District Court**<br>Bernalillo County, New Mexico<br>400 Lomas NW<br>Albuquerque, NM 87102<br>**Court Telephone:** (505) 841 - 7438 | Case Number: D-202-CV-2019-05881<br><br>Judge: Brickhouse, Beatrice J. |
| Plaintiff: Robert Mestas<br><br>v.<br><br>Defendants: CHW Group Inc. dba Choice Home Warranty, Victor Mandalawi and Jane Does 1-10 | Defendant name: CHW GROUP INC. dba CHOICE HOME WARRANTY<br><br>Address: c/o your Officer Victor Mandalawi at 1090 King Georges Post Rd, Bldg 10, ste. 1007, Edison, NJ |

**TO THE ABOVE NAMED DEFENDANT**: Take notice that:

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA). The Court's address is listed above.

3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

6. If you need an interpreter, you must ask for one in writing.

7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Albuquerque, New Mexico, this ____ day of ____7/25/2019____, 2019

JAMES A. NOEL
CLERK OF THE DISTRICT COURT

By: Cathy Chavez, Deputy

/s/ Sid Childress

Sid Childress, Lawyer
PO Box 2327
Santa Fe, NM 87504
505-433-9823
Attorney for Plaintiffs

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
7/25/2019 9:27 AM
James A. Noel
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

ROBERT MESTAS,

    Plaintiff,

v.                                                                  case no.  D-202-CV-2019-05881

CHW GROUP INC. dba CHOICE HOME
WARRANTY, VICTOR MANDALAWI
and Jane Does 1-10,

    Defendants.

## COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, THE UNFAIR PRACTICES ACT AND TORTS

TO THE HONORABLE COURT:

### Introduction

1. Plaintiff Robert Mestas ("Plaintiff") is a real person residing in Bernalillo County, New Mexico who may be contacted through his undersigned attorney.

2. Plaintiff brings this action in accordance with New Mexico state-law and the anti-harrassment provisions of the Telephone Consumer Protection Act ("the TCPA"), a federal statute enacted in 1991 in response to widespread outrage about the proliferation of intrusive, nuisance telemarketing. See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).

3. The TCPA is intended to protect consumer privacy by prohibiting certain unsolicited, autodialed or pre-recorded message telemarketing calls, and to provide for transparency by

1

requiring that telemarketers identify themselves and who they are calling for during the calls. The New Mexico Unfair Practices Act ("the UPA") is of similar design as it pertains to telephoning consumers.

4. The TCPA established the National Do-Not-Call Registry ("the Registry"). The Registry allows people to list their telephone numbers and thereby indicate their instructions to NOT receive telephone solicitations. *See* 47 C.F.R. § 64.1200(c)(2).

5. Telemarketers are required by law to subscribe to and comply with the Registry. 47 U.S.C. § 227(C)(3)(F-G); 16 C.F.R. Part 310; 47 C.F.R. § 64.1200(c).

6. Congress made a finding when it enacted the TCPA that "more than 300,000 solicitors call more than 18,000,000 Americans every day". *Federal Communications Commission ("FCC") Report and Order 03-153, July 3, 2003,* ¶¶ *8 & 66* (hereinafter "FCC 03"). As of FCC 03 "the number of **daily calls** [had] increased five fold (to an estimated **104 million**) due in part to the use of new technologies such as predictive dialers." *Id.*

7. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the FCC. *See Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780 ¶1 (July 10, 2015).

8. The Omnibus TCPA Order of July 10, 2015 provides more detail at its paragraph 5:

> "Between 2010 and 2012, consumer complaints about calls to wireless phones doubled, to an average of over 10,000 complaints per month in 2012. In 2013 and 2014, the Commission received roughly 5,000 or 6,000 such complaints per month, lower than in 2011 and 2012, but still a substantial monthly total that is persistently one of the top consumer concerns. The Federal Trade Commission (FTC) reports that it received "approximately 63,000 complaints about illegal robocalls each month" during the fourth quarter of 2009, but that "[b]y the fourth quarter of 2012, robocall

> complaints had peaked at more than 200,000 per month."

and at its paragraph 7:

> "39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."

9. The TCPA established a private right of action to receive $500 for each violation of the statute's Subsection B or its implementing regulations. These statutory damages may be trebled by the Court for willful or knowing violations. 47 U.S.C. § 227(b)(3). The TCPA provides a separate cause of action for each call in violation of Subsection C or its implementing regulations. The Court may award statutory damages under Subsection C of up to $1500 for each violative call. 47 U.S.C. § 227(c)(5).

## Jurisdiction and Venue

10. Plaintiff and his phone were in Albuquerque at the time of the illegal telemarketing the subject of this Complaint that Defendants and/or their agents harassed him with. Plaintiff resides in Albuquerque.

11. Defendants do business within New Mexico because Defendants or their agents regularly, automatically, repeatedly telephone the telephones of New Mexico residents located within New Mexico for the purpose of advertising products and services to New Mexico residents. Defendants market and sell products and services throughout the State of New Mexico. By directing or conspiring to direct telemarketing phone calls into the forum state, Defendants made themselves subject to the specific personal jurisdiction of the courts of the forum state.

12. The TCPA was intended to give consumers re-dress even in their local small claims courts where they reside. See again for example *Mims v. Arrow Fin. Servs., LLC*, supra, 132 S.Ct. at 745-751. This Court has subject matter jurisdiction.

### the Defendants

13. CHW Group Inc. ("CHW" or "Defendants") is a New Jersey corporation that may be served a Summons by delivery to its officer Victor Mandalawi.

14. Victor Mandalawi ("Mandalawi" or "Defendants") is a real person who controls CHW. He should be served a Summons at CHW's principal place of business 1090 King Georges Post Rd., Bldg. 10, ste. 1007, Edison, NJ.

15. Defendants Jane Does 1-10 ("Jane Does" or "Defendants") are real persons or organizations who substantially directed, controlled and participated with Defendants in the telemarketing conspiracy described below that harassed Plaintiff, or that actually made or initiated the robocalls the subject of this Complaint.1   Their identities and whereabouts will be discovered so that process can be duly served on them.

### the Illegal Phone Calls Defendants owe Plaintiff for

16. Plaintiff uses for his personal or residential purposes a wireless or cell phone assigned the number **505-730-1575**. All references herein to Plaintiff's cell phone refer also to his associated phone number 505-730-1575, which is his only phone number.

17. On June 24, 2019 Plaintiff received a call to his cell phone that his Caller ID service indicated was from "505-488-7906". Plaintiff answered this call then experienced the tell-tale indicators that an automatic telephone dialing system ("autodialer") had been used to make the call: a strange silence or pause of "dead air" and/or strange clicking sounds before a live human

---

1 The FCC has defined "robocalls" as "calls that require consumer consent", including "calls made either with an automatic telephone dialing system ("autodialer") or with a prerecorded or artificial voice". *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order released on 7/10/15, 30 FCC Rcd. 7961 ("FCC 15-72"), footnote 1.

telemarketer came on the line.

18. During this June 24 auto-dialer call, the telemarketer identified the seller or sponsor of the call only as "Support First". Plaintiff was given no other identification, location or contact information for the caller, seller or the sponsor of the call.

19. Plaintiff also knows the June 24 call was made with an autodialer because the telemarketer who came on the line did not at first know Plaintiff's name. The telemarketer only spoke a scripted, standardized telephone solicitation that sought to interest Plaintiff in a service contract for his home, the kind of standardized sales pitch used by automated mass-marketing, not by human or manually-made phone callers to individually known consumers.

20. On July 1, 2019 Plaintiff received a call to his cell phone that his Caller ID service indicated was from "505-209-7876". Plaintiff answered this call then experienced a silence or pause of "dead air" and/or strange clicking sounds before a live human telemarketer came on the line.

21. During this July 1 auto-dialer call, which was over 15 seconds long, the telemarketer identified the seller or sponsor of the call only as "Support First". Plaintiff was given no other identification, location or contact information for the caller, seller or the sponsor of the call.

22. Plaintiff also knows the July 1 call was made with an autodialer because the telemarketer who came on the line did not at first know Plaintiff's name and spoke at Plaintiff the same scripted, standardized telephone solicitation he previously heard on June 24 from "Support First", that sought to interest Plaintiff in a service contract for his home.

23. "Support First" is the fake name of an unknown or non-existent entity. Defendants fraudulently use this fake name so that consumers aggravated by their illegal robocall harassment

cannot easily use the fake name to accurately identify and locate the Defendants.

24. Solely for the purpose of attempting to identify Defendants, Plaintiff on July 1, 2019 allowed the call-center that called him with "505-209-7876" (one of the Jane Doe Defendants herein to be identified via discovery), to transfer him to another call-center to continue the telephone solicitation. After receiving a direct transfer, the second call-center identified the seller or sponsor of the calls as Defendant herein CHW Group Inc., "Choice Home Warranty".

25. On July 2, 2019 Plaintiff received a call to his cell phone that his Caller ID service indicated was from "732-609-8444". Plaintiff answered this call then experienced a silence or pause of "dead air" and/or strange clicking sounds before a live telemarketer came on the line.

26. Plaintiff also knows the July 2 call was made with an autodialer because the telemarketer who came on the line did not at first know Plaintiff's name and spoke at Plaintiff the same scripted, standardized telephone solicitation he previously heard on June 24 and July 1 from "Support First", that sought to interest Plaintiff in a service contract for his home.

27. On July 3, 2019 Plaintiff received a call to his cell phone that his Caller ID service indicated was from "732-609-8444". Plaintiff answered this call then experienced a silence or pause of "dead air" and/or strange clicking sounds before a live telemarketer came on the line.

28. Plaintiff also knows the July 3 call was made with an autodialer because the telemarketer who came on the line did not at first know Plaintiff's name and spoke at Plaintiff the same scripted, standardized telephone solicitation he previously heard on June 24, July 1 and July 2 from "Support First", that sought to interest Plaintiff in a service contract for his home.

29. The telemarketers on July 2 and July 3 also used the fake name "Support First" with Plaintiff, but they did also identify the seller or sponsor of the calls as Defendant herein CHW

Group Inc., "Choice Home Warranty".

30. Through the dates of the phone calls to Plaintiff described above, Plaintiff could call the numbers back, that appeared on his Caller ID, and get back into the call-center that called him.

31. The phone number 732-609-8444 is currently assigned to and controlled by CHW. The number was assigned to and controlled by CHW on July 2 and July 3.

32. CHW has been assigned and controls many New Jersey area code 732 numbers that it uses for telemarketing.

33. On July 24, 2019 Plaintiff received a call to his cell phone that his Caller ID service indicated was from "505-209-7876". Plaintiff answered this call then experienced a silence or pause of "dead air" and/or strange clicking sounds before a live telemarketer came on the line.

34. During this July 24 auto-dialer call, which was over 15 seconds long, the telemarketer identified the seller or sponsor of the call only as "Support First". Plaintiff was given no other identification, location or contact information for the caller, seller or the sponsor of the call.

35. Plaintiff also knows the July 24 call was made with an autodialer because the telemarketer who came on the line did not at first know Plaintiff's name and spoke at Plaintiff the same scripted, standardized telephone solicitation he previously heard on June 24, July 1, July 2 and July 3, that sought to interest Plaintiff in a service contract for his home.

36. Plaintiff's cell phone number has at all relevant times been continuously listed on the National Do-Not-Call Registry ("the Registry").

37. Defendants do not subscribe to or comply with the Registry as required by law and could not care less that any particular phone number may be listed on the Registry.

38. Plaintiff has never consented to being auto-dialed or robo-called by Defendants or their

agents.

39. Plaintiff has never had any prior relationship with Defendants.

40. Defendants' calls complained of herein aggravated and harrassed Plaintiff, wasted his time, invaded his privacy, disrupted his days, were an obnoxious nuisance and cost him electricity to re-charge his phone.

41. Defendants had the authority and responsibility to prevent or correct the unlawful telemarketing practices that are the subject of this Complaint.

42. Defendants formulated, directed, controlled and participated in the unlawful telemarketing practices that are the subject of this Complaint.

43. Defendants directly and personally participated in, ratified, directed and/or authorized the unlawful telemarketing practices that are the subject of this Complaint.

**More Facts**

44. Thousands of consistent, similar consumer complaints have been made about CHW's telemarketing and other sales practices, in online forums, to the Better Business Bureau and to government consumer protection agencies.

45. Numerous lawsuits have been filed against CHW in state and federal courts across the country complaining of CHW's telemarketing and other sales practices.

46. CHW and Mandalawi have at all times been aware of these complaints and lawsuits and the consistent nature of their allegations.

47. These consistent complaints and lawsuits have been made and filed against CHW throughout its existence and continue to the present.

48. Defendants use robo-calling because it allows for thousands of automated sales calls to

be initiated in a very short period of time, but their sales representatives or telemarketers only need actually spend time on the phone with consumers who respond positively. Defendants thereby illegally shift the cost of aggravation and wasted time to the public at large and away from themselves where it belongs.

49.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was knowing and willful.

50.     Defendants' conduct set forth herein and directed at Plaintiff in New Mexico was intentional, conscious, deliberate and volitional.

51.     Mandalawi approves and directs all CHW's contracts and agreements for autodialing and telemarketing and authorizes all payments and compensation to the actual telemarketers and call-centers who engage in the auto-dialing on behalf of CHW.

52.     Mandalawi controls and dominates CHW and has personal knowledge of all CHW's acts and omissions.

53.     Mandalawi has personal knowledge of, consciously avoids knowing or is recklessly indifferent to the use of autodialers on behalf of CHW to solicit consumers including Plaintiff on their cell phones, without the consumers' consent, and that the dialers do not subscribe to or comply with the Registry.

54.     Mandalawi is personally aware of and approved the standardized telemarketing sales scripts used in the robocalls to Plaintiff described above including the use of the fake name "Support First".

55.     Mass-marketing by robo-call results in consumer complaints. CHW and Mandalawi based on the numbers of consumer complaints to and about their telemarketers had an actual

awareness or should have an actual awareness that their agents actually making or initiating their calls use auto-dialers directed to people who object to the calls, did not consent to them, and whose telephone numbers are listed on the National Do-Not-Call Registry.

56. Minimal oversight by Mandalawi would confirm for him that CHW's telemarketers do not comply with the TCPA or the FTC's Telemarketing Sales Rule ("the TSR"), including their failures to properly identify to consumers the sellers and sponsors of the calls.

57. Mandalawi and CHW knew or consciously avoided knowing that CHW and CHW's agents or co-conspirators, the Jane Doe Defendants herein, were engaged in the unlawful conduct described herein that violated the TCPA and the TSR. While knowing or consciously avoiding knowing the same, Mandalawi continued to direct and control them, and to conspire with and provide substantial assistance or support to Defendants in continuance of their illegal robocalling conspiracy that repeatedly unlawfully harassed Plaintiff.

## Defendants' Direct or Vicarious Liability

58. The FCC has long made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

59. In 2013 the FCC explained that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Id.* at 6586 ¶ 34.

60. The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

61. The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

62. "As the FTC has explained in its Compliance Guide, 'taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman*, 714 F.3d 1211, 1216-1219 (10th Cir. 2013).

63. Jane Does are directly liable and responsible for the phone calls at issue because they actually made or initiated the calls to Plaintiff or they substantially participated.

64. CHW is directly liable and responsible for the phone calls at issue because CHW actually made or initiated the calls to Plaintiff, or CHW substantially participated. Alternatively CHW is vicariously liable for the conduct of Jane Does because Defendant:

    a) authorized the phone calls;

    b) directly or indirectly controlled the persons who actually made or initiated the

calls;

    c)    allowed the telemarketers access to information and operating systems within Defendant's control for the purpose of selling goods and services;

    d)    allowed the telemarketers to enter consumer information into Defendant's sales, dialing or operational systems;

    e)    approved, wrote or reviewed the telemarketing sales script;

    f)    Defendant reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the TCPA and Defendant failed to take effective steps within its power to require compliance with the TCPA;  OR

    g)    Defendant gave substantial assistance or support to Jane Does while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that they were engaged in acts or practices that violated the TSR.

65.    Mandalawi is vicariously liable because he:

    a)    authorized the phone calls;

    b)    directly or indirectly controlled the persons who actually made or initiated the calls;

    c)    allowed the telemarketers access to information and operating systems within Defendants' control for the purpose of selling goods and services;

    d)    allowed the telemarketers to enter consumer information into Defendants' sales, dialing or operational systems;

    e)    approved, wrote or reviewed the telemarketing sales script;

    f)    Defendant reasonably should have known or consciously avoided knowing that

the actual telemarketers were violating the TCPA and Defendant failed to take effective steps within its power to require compliance with the TCPA; OR

g) Defendant gave substantial assistance or support to Jane Does while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that they were engaged in acts or practices that violated the TSR.

FIRST SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection B

66. The foregoing acts and omissions of Defendants or their agents on their behalf constitute multiple violations of 47 U.S.C. § 227(b) and its implementing regulations.

67. Plaintiff is entitled to and should be awarded against Defendants $500 in damages for each and every violation of the TCPA's Subsection B and its implementing regulations. Because Defendants' conduct set forth above was knowing and/or willful Plaintiff is entitled to and should be awarded treble damages of up to $1,500 for each and every violation.

SECOND SET OF CLAIMS FOR RELIEF - Violations of the TCPA's Subsection C

68. Defendants or Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact his phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times.

69. For each of Defendants' calls to Plaintiff the subject of this Complaint, Plaintiff should recover up to an additional $1500 pursuant to 47 U.S.C. § 227(c).

COMMON-LAW CLAIMS

70. Plaintiff hereby sues Defendants for trespass to chattels and for their civil conspiracy to direct an illegal telemarketing campaign into the State of New Mexico and to Plaintiff in

13

particular.

71. As set forth and described above, Defendants' conduct was knowing, willful, wanton, reckless, intentional and/or grossly negligent with conscious or deliberate disregard of Plaintiff's right to not be subjected to Defendants' illegal harassment.

72. Plaintiff should have and recover judgment against Defendants for all his actual damages or all his statutory damages, and for an amount of nominal plus exemplary damages sufficient to set an example and deter in the future the conduct complained of by Defendants or others.

## FOURTH SET OF CLAIMS FOR RELIEF - UPA Violations

73. Plaintiff hereby brings this action pursuant to the New Mexico Unfair Practices Act ("the UPA") to recover his statutory damages for each violation of the UPA and his attorney fees. As set forth above Defendants' conduct was knowing and/or willful therefore Plaintiff is entitled to and should be awarded treble his statutory damages.

74. Each call to Plaintiff from Defendants the subject of this matter was a distinct violation of NMSA § 57-12-22(C)(1).

75. Defendants' calls to Plaintiff were additional distinct violations of NMSA § 57-12-22(B)(1).

76. Each call to Plaintiff from Defendants the subject of this matter was an actionable unfair or deceptive trade practice because each call violated § 310.4 of the Telemarketing Sales Rule.

77. The calls to Plaintiff described above were abusive because they denied Plaintiff his right to NOT receive telemarketing calls based on his phone number's listing on the Registry and because Defendants do not have or abide by reasonable internal do-not-call policies and

procedures that are required by law.

78.     The calls to Plaintiff described above were abusive because the callers did not properly identify the callers or Defendants during the calls as required by law.

79.     Mandalawi and CHW additionally distinctly violated the UPA because pursuant to 16 C.F.R. §310.3(b):

> "It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§310.3(a), (c) or (d), or §310.4 of this Rule."

WHEREFORE, Plaintiff prays for entry of judgment for - his statutory, actual, treble and/or nominal damages; for exemplary damages sufficient in size to set an example and deter in the future the conduct complained of by Defendant or others; and for such other and further relief as the court deems just, proper and lawful. Plaintiff requests an award of his attorney fees and costs.

RESPECTFULLY SUBMITTED,

By:     /s/ Sid Childress

Sid Childress, Lawyer
PO Box 2327
Santa Fe, NM 87504
childresslaw@hotmail.com
(505) 433 - 9823
Attorney for Plaintiff

FILED
2nd JUDICIAL DISTRICT COURT
Bernalillo County
7/25/2019 9:27 AM
James A. Noel
CLERK OF THE COURT
Catherine Chavez

STATE OF NEW MEXICO
BERNALILLO COUNTY
SECOND JUDICIAL DISTRICT COURT

ROBERT MESTAS,

        Plaintiff,

v.                                 case no.  D-202-CV-2019-05881

CHW GROUP INC. dba CHOICE HOME
WARRANTY, VICTOR MANDALAWI
and Jane Does 1-10,

        Defendants.

## COURT-ANNEXED ARBITRATION CERTIFICATE

Pursuant to LR2-603 Plaintiff hereby certifies that Plaintiff seeks relief other than a money judgment, or he seeks judgment for an amount of money in excess of $25,000 exclusive of interest, costs and attorney fees.

                                        RESPECTFULLY SUBMITTED,

                            By:   /s/ Sid Childress

                                   Sid Childress, Lawyer
                                   PO Box 2327
                                   Santa Fe, NM 87504
                                   childresslaw@hotmail.com
                                   (505) 433 - 9823
                                   Attorney for Plaintiff