IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBERT MESTAS,

      Plaintiff,

v.                                                                          No. 19-CV-792 MV/CG

CHW GROUP INC. DBA CHOICE HOME
WARRANTY, VICTOR MANDALAWI
and Jane DOES 1-10,

      Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER comes before the Court on the Joint Motion to Dismiss Plaintiff's

Amended Complaint [Doc. 10]. The Court, having considered the motion, briefs, and relevant

law, and being otherwise fully informed, finds that the motion is well-taken in part and will be

granted in part and denied in part.

**BACKGROUND**

The facts as alleged in the Amended Complaint are as follows.  Plaintiff Robert Mestas

uses for his personal or residential purposes a cellular telephone assigned the number 505-730-

1575 (Plaintiff's "cell phone").  Doc. 8 ¶ 9.  Plaintiff's cell phone "has at all relevant times been

continuously listed on the National Do-Not-Call Registry."  *Id.* ¶ 33.  Plaintiff has never had any

relationship with Defendants CHW Group Inc. dba Choice Home Warranty ("CHW") or Victor

Mandalawi and has never consented to being called by them.  *Id.* ¶¶ 36-37.

On five separate occasions, namely, June 24, 2019, July 1, 2019, July 2, 2019, July 3,

2019, and July 24, 2019, Plaintiff received calls on his cell phone from "Jane Does" that were

similar in nature.  Specifically, when Plaintiff answered each call, he heard "a strange silence or

pause of 'dead air' and/or strange clicking sounds before a live human telemarketer came on the line," which indicated to him that "an automatic telephone dialing system ('autodialer') had been used to make the call."  *Id.* ¶¶ 10, 13, 19, 21, 27.  During each call, the telemarketer who came on the line "did not at first know Plaintiff's name" and "spoke [the same] scripted, standardized telephone solicitation that sought to interest Plaintiff in a service contract for his home."  *Id.* ¶¶ 12, 15, 20, 22, 29.  Also during each call, the telemarketer identified the seller or sponsor of the call as "Support First," which is "fake name."  *Id.* ¶¶ 11, 14, 16, 20, 23, 28.  After these five calls, on unidentified dates, Plaintiff received an unidentified number of additional calls of a similar nature, but the calls ceased once "CHW and Mandalawi received a Summons in this matter."  *Id.* ¶¶ 30-32.

According to Plaintiff's caller identification, the June 24, 2019 call was from 505-488-7906, the July 1, 2019 call and the July 24, 2019 calls were from 505-209-7876, and the July 2, 2019 call and the July 3, 2019 call were from 732-609-8444.  *Id.* ¶¶ 10, 13, 19, 21, 27.  Plaintiff was able to call those numbers back and reach "the call-center that called him."  *Id.* ¶ 24.  The number from which the July 2, 2019 and July 3, 2019 calls were made (732-609-8444) "was assigned to and controlled by CHW" on the date of the calls.  *Id.* ¶ 25.

During the July 1, 2019 call, Plaintiff had a conversation with the telemarketer who initiated the call "for over 15 seconds," but at no time during the call did the telemarketer identify the seller or sponsor of the call as anything other than "Support First."  *Id.* ¶ 14.  The telemarketer transferred Plaintiff to the in-house call center of CHW, at which point the second telemarketer "identified the seller or sponsor of the call as CHW Group, Inc., 'Choice Home Warranty.'"  *Id.* ¶¶ 17, 18, 48, 49.  During the July 2, 2019 and July 3, 2019 calls, the telemarketer who initiated the calls similarly "identified the seller or sponsor of the calls as []

CHW Group Inc, 'Choice Home Warranty.'"  *Id.* ¶ 23.  The calls "aggravated and harassed Plaintiff, wasted his time, invaded his privacy, disrupted his days, were an obnoxious nuisance and cost him electricity to re-charge his phone."  *Id.* ¶ 37.

CHW and Mandalawi, who "controls and dominates CHW," "authorized" the telemarketing calls to Plaintiff, "directly or indirectly controlled" the persons who actually initiated those calls, "allowed the telemarketers" to access "information and operating systems within [their] control for the purposes of selling goods and services," and to "enter consumer information into [CHW's] sales, dialing or operational systems," and approved, wrote, or reviewed" the script used by the telemarketers during those calls.  *Id.* ¶ 64, 65.  Specifically, "Jane Does" initiated the calls to Plaintiff pursuant to a "contract or agreement [with] CHW," the terms of which, including payments and compensation to the telemarketers, "Mandalawi approved." *Id.* ¶¶ 48, 49.  Further, Mandalawi personally approved the telemarketers' script and use of the name "Support First" during the calls.  *Id.* ¶¶ 50, 52.

CHW's telemarketing practices have been the subject of numerous consumer complaints, filed with the Better Business Bureau and government consumer protection agencies, and lawsuits filed against CHW.  *Id.* ¶¶ 41-44.  In those complaints and lawsuits, consumers have indicated that they object to CHW's telemarketing calls, did not consent to them, and received them despite being listed on the National Do-Not-Call Registry.  *Id.* ¶ 53.

Based on these facts, Plaintiff commenced the instant action on July 25, 2019 in New Mexico state court.  Doc. 1-1.  Defendants then removed the action to this Court on August 30, 2019.  Doc. 1.  Thereafter, on October 8, 2019, Plaintiff filed his Amended Complaint for Violations of the Telephone Consumer Protection Act, the Unfair Practices Act and Torts [Doc. 8].  Defendants CHW and Mandalawi now move this Court to dismiss the Amended Complaint,

with prejudice, in its entirety.  Doc. 10.

## DISCUSSION

Although not a model of clarity, Plaintiff's Amended Complaint appears to set forth claims under two provisions of the Telephone Consumer Protection Act ("TCPA"), New Mexico common law claims of trespass to chattels and civil conspiracy, and claims under the New Mexico Unfair Practices Act ("UPA").  Mandalawi seeks to dismiss Plaintiff's claims as against him for lack of personal jurisdiction.  In addition, CHW and Mandalawi seek to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted, and for lack of standing.

I.      Rule 12(b)(2) Motion to Dismiss for Lack of Jurisdiction

        A.      Standard

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here, there has been no evidentiary hearing, "the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.*  And where, as here, the defendant provides "no affidavit or other written materials to controvert any of the factual allegations in the complaint," the Court "must accept as true all well-pled factual allegations therein, as well as construe the same in the light most favorable to [the] plaintiff." *Smart-Tel Commc'ns, LLC v. Advanced Commc'ns & Maint.*, No. 16-cv-222, 2016 WL 11694168, at *4 (D. Colo. Sept. 29, 2016).  "[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz*, 55 F.3d at 1505.  In summary, the court's "task is to determine whether the plaintiff's allegations . . .  make a prima facie showing of personal jurisdiction." *Id.*

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Here, New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002).  Thus, to determine whether this court may exercise personal jurisdiction over Defendants, the relevant inquiry is whether that exercise of jurisdiction "comports with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." *Burger King Corp. v. Rudzewicz*, I471 U.S. 462, 471-72 (1985).  In the "canonical opinion" of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that a court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Daimler*, 571 U.S. at 126 (quoting *International Shoe*, 326 U.S. at 316).

Two categories of personal jurisdiction have developed from *International Shoe*'s conception of "fair play and substantial justice":  general jurisdiction and specific jurisdiction. *Daimler*, 571 U.S. at 126; *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017).  "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* (citations omitted; emphasis in original). Notably, however, "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in that State."  *Id.* (citations omitted).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Id.* (citations omitted).

In contrast, "[i]n order for a court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780 (citations omitted; emphasis in original).   "[T]here must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." *Id.* (citation omitted).  Specific jurisdiction thus "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted).  The Tenth Circuit has framed the "minimum contacts" test in the context of specific jurisdiction as "encompass[ing] two distinct requirements:  (1) that the defendant must have purposely directed its activities at residents of the forum state, and (ii) that the plaintiff's injuries must arise out of the defendant's forum-related activities." *Id.* (citations omitted).

B.    The Instant Case

Plaintiff does not claim that the Court has general jurisdiction over Mandalawi but asserts that Mandalawi is subject to this Court's specific jurisdiction because he "direct[ed] or conspir[ed] to direct unlawful robocalls into the forum state."  Doc. 8 ¶ 4.  Defendants argue that the allegations in the Amended Complaint connecting Mandalawi to the calls to Plaintiff are insufficient to establish that Mandalawi "purposely directed" activities at residents of the forum state.  Doc. 10 at 9-10.  Accordingly, Defendants' argument continues, Mandalawi is not subject to the specific jurisdiction of this Court.  *Id.*

In support of their argument, Defendants point to three cases in which the court dismissed for lack of personal jurisdiction what Defendants characterize as "similar if not virtually identical" complaints.  *Id.*  In each of those cases, however, the defendants submitted affidavits in which they specifically refuted the allegations through which the plaintiff attempted to link the

defendants to the calls at issue.  *See Cunningham v. Local Lighthouse Corp.*, No. 16-cv-2284, 2017 WL 4053759, at *3 (M.D. Tenn. Aug. 7, 2017) (where complaint alleged that individual defendants "had direct, personal participation in causing the illegal telephone calls to be made," the defendants stated by affidavit that they "never personally directed any individual to call or contact the Plaintiff");  *Childress v. Deering*, No 18-cv-455, 2019 WL 409825, at *5 (D.N.M. Jan. 29, 2019) (defendant stated in his affidavit "that he never made outbound telemarking calls like the ones Childress describes in his complaint, nor has he ever employed anyone to make such calls for him," and that he never participated in, set up, directed, controlled, or otherwise authorized the alleged calls); *Arnold v. Grand Celebration Cruises, LLC*, No. 17-cv-685, 2017 WL 3534996, at *4 (D.N.M. Aug. 16, 2017) (representative of defendant entity stated in his declaration that entity "did not direct or control the alleged telephone calls to Plaintiff and did not employ any third parties to make outbound telemarketing calls of the kind Plaintiff alleges he received").  Because the defendants "controverted [the plaintiffs' factual allegations] by affidavit," *id.* at *3, the court in *Cunningham*, *Childress*, and *Arnold* found that the plaintiff before it had not met his burden of making a *prima facie* showing of personal jurisdiction. *Cunningham*, 2017 WL 4053759, at *4 (finding that, in face of defendants' supporting affidavits, plaintiff failed to provide specific facts to make prima facie case of personal jurisdiction); *Childress*,  2019 WL 409825, at *5 ("After considering the pleadings and affidavits in the light most favorable to Childress, the Court finds that Childress has failed to demonstrate that Deering has sufficient minimum contacts with New Mexico for the Court to exercise jurisdiction over him."); *Arnold*, 2017 WL 3534996, at *4 (where plaintiff did "not specify any statement in his Declaration that contradict[ed] Mr. Lambert's representations," court found that plaintiff failed to establish personal jurisdiction).

In contrast, Defendants here have not submitted an affidavit or other written materials to controvert any of the factual allegations in the Amended Complaint.  Thus, the jurisdictional findings in *Cunningham*, *Childress*, and *Arnold* are of little persuasive value here.  Unlike the courts in each of those cases, this Court must accept as true Plaintiff's well-pled allegations that connect Mandalawi to the calls to Plaintiff and construe them in the light most favorable to Plaintiff.

Defendants further insist that *Cunningham*, *Childress*, and *Arnold* counsel dismissal here, as they stand for the proposition that "[i]n cases like this one wherein the personal jurisdiction over the TCPA turns on an agency relationship, where the plaintiff alleges no facts connecting the caller to the defendant, courts recognize no personal jurisdiction."  *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1242 (D.N.M. 2019) (citing *Cunningham*, *Childress*, and *Arnold*).  In the instant case, however, Plaintiff *does* allege facts connecting the callers, Jane Does, to Mandalawi.  Specifically, Plaintiff alleges that Mandalawi, who "controls and dominates CHW," "authorized" the telemarketing calls to Plaintiff, "directly or indirectly controlled" the persons who actually initiated those calls, "allowed the telemarketers" to access "information and operating systems within [their] control for the purposes of selling goods and services," and to "enter consumer information into [CHW's] sales, dialing or operational systems," and approved, wrote, or reviewed" the script used by the telemarketers during those calls.  Doc. 8 ¶ 64, 65.  Plaintiff further alleges that Jane Does initiated the calls to Plaintiff pursuant to a "contract or agreement [with] CHW," the terms of which, including payments and compensation to the telemarketers, "Mandalawi approved."  *Id.* ¶¶ 48, 49.  Finally, Plaintiff specifically alleges that Mandalawi personally approved the telemarketers' script and use of the name "Support First" during the calls.  *Id.* ¶¶ 50, 52.

This is not a case where Plaintiff merely "conclusorily alleged corporate officers' involvement in authorizing a telemarketing scheme," *Cunningham*, 2017 WL 4053759, at *3-4, or only "surmised" that "the caller and the defendant were connected," *Childress*, 2019 WL 409825, at *4-5.  Rather, Plaintiff has specifically alleged facts that, if proven, would establish that Mandalawi *himself* was personally involved in orchestrating the calls to Plaintiff.  Accepting as true Plaintiff's well-pled allegations connecting Mandalawi to the subject calls and construing those allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has met his burden of making a *prima facie* showing of specific jurisdiction over Mandalawi.  The Court thus declines to dismiss Mandalawi from this action for lack of personal jurisdiction.

II.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

    A.    Standard

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

B.    Failure to Comply with Rule 8(a)

As an initial matter, Defendants argue that dismissal of Plaintiff's claims in their entirety is warranted because Plaintiff has failed to comply with Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) requires a complaint to contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  According to Defendants,

Plaintiff fails to meet this standard because the Amended Complaint "conflates and does not

differentiate between parties [] or their alleged conduct."  Doc. 10.  "While the Court notes that

Plaintiff's [Amended Complaint] could have been more cogently structured, 'the stringent

requirement to specifically name which defendant did what to the plaintiff is a standard that

tends to apply to complex claims, such as civil rights actions.'"  *Mohon v. Nat'l Congress of*

*Employers Inc.*, 19-cv-652, 2020 WL 1332376, at *3 (D.N.M. Mar. 23, 2020) (quoting *Dendy v.*

*Chartrand*, 18-cv-1118, 2019 WL 719762, at *2 (D.N.M. Feb. 20, 2019)).  Cases involving the

TCPA and related state law claims, like this one, do not involve such complex claims.  *See*

*Mohon*, 2020 WL 1332376, at *3.  Accordingly, "the Court must determine plausibility with an

analysis of the elements of the claims asserted in the [Amended Complaint]."  *Id.*

   C. <u>Plaintiff's Claim Under Section 277(b) of the TCPA</u>

   Plaintiff alleges that Defendants violated Section 227(b) of the TCPA, which authorizes a

private right of action for a violation of that section or of the regulations promulgated thereunder.

47 U.S.C. § 227(b)(3).  To state a claim under Section 227(b), a plaintiff must allege that (1) the

defendant made a telephone call (2) to the plaintiff's cellular phone (3) using "any automated

telephone dialing system or an artificial or prerecorded voice."  47 U.S.C. § 277(b)(1)(A)(iii).

Here, Defendants argue that Plaintiff has failed to adequately allege the first and third of these

elements.

   With regard to the first element, Defendants argue that Plaintiff has failed to adequately

plead that CHW or Mandalawi "made" the telephone calls at issue, because the Amended

Complaint is devoid of allegations either that CHW or Mandalawi initiated the calls or were in a

principal/agency relationship with the individuals who did so.  The Court agrees that neither

CHW nor Mandalawi can be held directly liable for making the calls but nonetheless finds that Plaintiff's allegations are sufficient to plead vicarious liability as to each of them.

"The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-cv-02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 39, 2015). Courts interpreting this provision "have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (citing *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301-02 (D. Nev. 2014) (associating the party who 'made' the call with 'the party who actually sent the text message to [Plaintiff]"); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and '[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was . . . a separate provider of text-message based services . . .")).

In the Amended Complaint, there are no factual allegations that CHW or Mandalawi made the telephone call at issue. Instead, Plaintiff alleges that Jane Does made the subject calls on behalf of CHW and Mandalawi. Doc. 8 at ¶ 48, 49. Accordingly, the Amended Complaint is insufficient to state a plausible claim that either CHW or Mandalawi is directly liable for the calls at issue.

While the TCPA "leaves ambiguous whether a seller on whose behalf a caller makes a call is liable," the FCC has interpreted Section 277 to impose vicarious liability on a seller "pursuant to 'federal common law agency principles.'" *Agentra*, 400 F. Supp. 3d at 1227 (quoting *Dish Network, LLC*, FCC 13-54, 6574, ¶ 33, at 6586). Courts have similarly held that

"[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018) (citing *Kristensen*, 879 F.3d at 1014 (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Melito*, 2015 WL 7736547, at * 6 (quoting Restatement (Third) of Agency, § 1.01 (2006)). "[T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiff[] must allege *some* facts regarding the relationship between an alleged principal and agent . . . and cannot simply allege general control in a vacuum." *Id.* at *7 (emphasis in original).

Here, the Amended Complaint contains specific factual allegations regarding the relationship between CHW/Mandalawi and the individuals who made the calls to Plaintiff.  First, Plaintiff alleges that two of the five virtually identical calls that he received came from a telephone number that "was assigned to and controlled by CHW" on the dates of the calls.  Doc. 8 ¶ 25.  Further, Plaintiff alleges that, during each of those calls, the telemarketer read from a script that had been personally approved by Mandalawi and that identified the seller and sponsor of the call as Support First, a name that also was personally approved by Mandalawi. Additionally, during two of the calls, the caller identified the seller or sponsor of the call as CHW Group.  And once CHW and Mandalawi were served in this action, Plaintiff alleges, the numerous calls from Jane Does suddenly ceased.  Albeit more generally, Plaintiff further alleges that  CHW and Mandalawi "authorized" the telemarketing calls to Plaintiff, "directly or indirectly controlled" the persons who actually initiated those calls, "allowed the telemarketers"

13

to access "information and operating systems within [their] control for the purposes of selling goods and services," and to "enter consumer information into [CHW's] sales, dialing or operational systems," and approved, wrote, or reviewed" the script used by the telemarketers during those calls. *Id.* ¶ 64, 65. Finally, Plaintiff alleges that "Jane Does" initiated the calls to Plaintiff pursuant to a "contract or agreement [with] CHW," the terms of which, including payments and compensation to the telemarketers, "Mandalawi approved." *Id.* ¶¶ 48, 49. Read together, these allegations are sufficient to plausibly state that Jane Does were acting as agents of CHW/Mandalawi when they made the calls to Plaintiff.

Defendants argue that the Amended Complaint is "starkly similar, if not virtually identical" to those filed by Plaintiff's attorney, and dismissed by this Court, in *Childress v. Liberty Mut. Ins. Co.*, No. 17-cv-1051, 2018 WL 4684209 (D.N.M. Sept. 28, 2018), and *Barker v. Sunrun Inc.*, No. 18-cv-855, 2019 WL 1983291 (D.N.M. Apr. 29, 2019). Indeed, the Court found in both *Childress* and *Barker* that the plaintiff failed to allege facts sufficient to connect the defendant to the offending calls, and thus that the defendant could not be held vicariously liable for those calls. *Childress*, 2018 WL 4684209, at *5; *Barker*, 2019 WL 1983291, at *4. Contrary to Defendants' position, however, those insufficient allegations are neither identical, nor similar in their specificity, to the allegations made in the instant case.

In *Childress*, the plaintiff alleged that he received a call from a "machine that played a pre-recorded message," during which the caller identified himself as "Jason" from "Cheap Insurance Experts." 2018 WL 4684209, at *4. While the plaintiff conclusorily stated that the pre-recorded message came from the defendant's "robot machine," he alleged no facts to support that statement. *Id.* To the contrary, he alleged that the voice on the recorded message "never accurately identified themselves, their employer or the sponsor of the call." *Id.* Thus, the Court

found that, even by the plaintiff's own account, there was no factual basis to support the theory

that the defendant was vicariously liable for the initial call made to the plaintiff. *Id.* The Court

also rejected the notion that the mere transfer of the call from the initial recorded message to the

defendant's in-house telemarketer would be sufficient to establish that Defendant exerted control

over the initiator of the call, supervised or controlled the initial call, or maintained any sort of

relationship with the initiator of the call. *Id.* Finally, the Court found that the plaintiff's

allegations that the defendant was vicariously liable for the conduct of its telemarketers, had the

authority and responsibility to prevent or correct the unlawful telemarketing practices, and

ratified, directed and/or authorized the unlawful telemarketing were legal conclusions that

merely recited the elements required to show an agency relationship, and as such did not suffice

to state a claim. *Id.* at *4-5. Accordingly, the Court concluded that the plaintiff's allegations

failed to plead any relationship, let alone an agency relationship, between the defendant and any

other individual or entity sufficient to allege vicarious liability under Section 227(b)(1)(A)(iii).

*Id.* at *5.

In *Barker*, the plaintiff alleged that he received three unsolicited calls and one voicemail

message on his cell phone from telemarketers attempting to interest him in purchasing a solar

electricity system for his home. 2019 WL 1983291, at *1. During the calls, the seller or sponsor

of the system was identified either as Smart Home Solar or Solar Works, but never as Sunrun,

the defendant in the case. *Id.* at *1-2. The plaintiff nevertheless sought to hold Sunrun

vicariously liable for the calls, alleging that "Sunrun had an agency relationship with the

individuals or entitles who actually made the offending phone calls." *Id.* at *3. The Court found

that this allegation "constitute[d] a legal conclusion, and so it [was] not entitled to a presumption

of truth." *Id.* The Court explained that the plaintiff made "no factual allegation in the Complaint

that connect[ed] or fairly trace[d] the phone calls at issue to Sunrun," and that while Plaintiff stated that he had "sworn statements that connect[ed] the actions to Sunrun," he neither attached those statements to nor incorporated them into his complaint, and thus they were not "helpful for this analysis." *Id.* Because the complaint alleged no more than a legal conclusion that the callers were in an agency relationship with Sunrun, the complaint was insufficient to state a claim against Sunrun based on vicarious liability. *Id.* at *4.

Perhaps learning from his experience in *Childress* and *Barker*, Plaintiff's attorney has mustered more detailed facts here than he did in those prior cases to allege an agency/principal relationship between the telemarketers who initiated the subject calls and the sellers whom he seeks to hold accountable for those calls. Unlike the plaintiffs in *Childress* and *Barker*, Plaintiff here does not rest his theory of control solely on the conclusion that a principal/agency relationship existed, or on a single transfer of a call from a third-party telemarketer to the seller's in-house telemarketer. Rather, as discussed above, Plaintiff specifically alleges as follows: CHW owned the telephone number from which two of the five virtually identical calls came; Mandalawi personally approved the telemarketing script used during the calls and the identification of "Support First" as the seller or sponsor of the calls; during two of the calls, the telemarketer who initiated the call identified the seller or sponsor of the call as CHW Group; and once CHW and Mandalawi were served in this action, the numerous calls from Jane Does suddenly ceased. Admittedly, the Amended Complaint includes statements that are somewhat similar to those found to be legal conclusions insufficient to establish agency in *Childress* and *Barker*, namely the allegations that CHW and Mandalawi "authorized" the telemarketing calls to Plaintiff and "directly or indirectly controlled" the persons who actually initiated those calls. Alone, those conclusory statements would be insufficient to state an agency/principal

relationship.  But in addition to the detailed factual allegations set forth above, the Amended

Complaint goes on to specifically allege that CHW and Mandalawi allowed the telemarketers to

access information and operating systems within their control and approved, wrote, or reviewed

the script used by the telemarketers during those calls, and that Jane Does initiated the calls to

Plaintiff pursuant to an agreement with CHW.  Taken together, these allegations are sufficient to

nudge Plaintiff's claim of vicarious liability across the line from conceivable to plausible,

thereby satisfying the first element of his Section 277(b) claim.

The third element of a Section 277(b) claim requires that the subject call be made using

"any automated telephone dialing system ('ATDS') or an artificial or prerecorded voice."

Defendants argue that Plaintiff fails to adequately allege this element for three reasons, none of

which the Court finds availing.  First, Defendants contend that dismissal is warranted because

Plaintiff did not allege that the "device or dialing system allegedly used to make the calls at issue

. . . ha[d] the 'present' (as opposed to potential) capacity to generate and dial 'random and

sequential' telephone numbers."  Doc. 10 at 16.  But the cases cited by Defendants make clear

that, at the pleading stage, a plaintiff is only required "to allege facts permitting an inference that

defendants called [him or] her with equipment that has the capacity to store or produce numbers

using a random or sequential number generator."  *Snow v. Gen. Elec. Co.*, No. 18-cv-511, 2019

WL 2500407, at *6 (E.D.N.C. June 14, 2019).   In *Snow*, the court found that the plaintiff had

not met this standard because the facts in the complaint alleged that "the text messages did not

reach her randomly, but rather reached her because she was assigned a telephone number

previously assigned to an individual who received technical alerts as part of a job function."  *Id.*

at *4; *accord Bader v. Navient Sols., LLC,* No. 18-cv-1367, 2019 WL 2491537, at *2 (N.D. Ill.

June 14, 2019). (dismissal warranted because plaintiff's allegations demonstrated that defendant

stored his number and called him).  Similarly, in *Dominguez v. Yahoo, Inc.*, also cited by Defendants, the court affirmed the district court's grant of summary judgment because the undisputed evidence demonstrated that the email service at issue "sent messages only to numbers that had been individually and manually inputted into its system by a user."  894 F.3d 116, 121 (3d Cir. 2018).  Here, there are no allegations to suggest that Plaintiff's number had been "individually and manually inputted into Defendants' system by a user," or that Plaintiff's number was chosen in any way other than by random selection.  To the contrary, Plaintiff alleges that the telemarketer who came on the line "did not at first know Plaintiff's name."  Doc. 8 ¶¶ 12, 15, 20, 22, 29.  Accordingly, the Amended Complaint permits the inference that the subject calls were made with equipment that has the capacity to store or produce numbers using a random or sequential number generator.

Next, Defendants contend that the Amended Complaint "provides only unsupported conclusions regarding the alleged use of an ATDS without any facts to back up those allegations."  Doc. 10 at 16.  But as Defendants acknowledge, Plaintiff specifically alleges that when he answered each of the subject calls, he heard "a strange silence or pause of 'dead air' and/or strange clicking sounds before a live human telemarketer came on the line," which indicated to him that "an automatic telephone dialing system ('autodialer') had been used to make the call."  Doc. 10 ¶¶ 10, 13, 19, 21, 27.  Courts routinely find such allegations sufficient at the pleading stage.  *See, e.g., Sessions v. Barclays Bank Delaware*, 317 F. Supp. 3d 1208, 1213 (N.D. Ga. 2018) (finding that plaintiff's allegations that, "when she answered Defendant's calls, she heard a 'dead air' silence of five or more seconds before a human representative appeared on the line, which Plaintiff state[d] [wa]s indicative of the use of an ATDS," sufficient to support the inference that the defendant used an ATDS); *Johansen v. Vivant, Inc.,* No. 12-cv-7159, 2012

WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (explaining that, in order to sufficiently state the use of an ATDS, a plaintiff "could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content of the message he received, or anything else about the circumstances of a call or message contributing to his belief it was pre-recorded or delivered via an ATDS"); *Asher v. Quicken Loans, Inc.*, No. 17-cv-1203, 2019 WL 131854, at *3 (D. Utah Jan. 8, 2019) ("Mr. Asher has alleged that he received unconsented calls that are indicative of [ATDS] equipment, and in the absence of a more plausible explanation for the genesis of those calls, the court finds such allegations sufficient.").

In *Becker v. Pro Custom Solar LLC*, the Court rejected the defendant's contention, virtually identical to that of Defendants here, that the plaintiff failed to satisfy "the ATDS definition" because he had "not alleged that his phone number was 'selected at random, or in some sequential order.'"  No. 19-cv-535, 2020 WL 474647, at *5 (M.D. Fla. Jan. 29, 2020).  In making its argument, the defendant in *Becker* had cited to *Gonzalez v. Ocwen Loan Servicing, LLC*, for its statement that "a device only qualifies as an ATDS under the TCPA if it has the present ability to generate random or sequential telephone numbers and dial them."  No. 18-cv-340, 2018 WL 4217065, at *8 (M.D. Fla. Sept. 5, 2018).  The *Becker* court noted that "[w]hile that statement is undoubtedly true" under the TCPA, "the court in *Gonzalez* did not state that a TCPA plaintiff must allege facts as to the specific dialing capabilities of a TCPA defendant's dialing equipment.  Indeed, the court in *Gonzalez* found that the plaintiff sufficiently alleged the use of an ATDS based upon his allegation that he 'hear[d] a pause when he answered before hearing a voice plus his allegation that [the defendant] used an ATDS.'"  *Becker*, 2020 WL 474647, at *5 (quoting *Gonzalez*, 2018 WL 4217065, at *7).   As the *Gonzalez* court reasoned,

"there is no way for a plaintiff to know the technological capabilities of the device used to place a call short of a caller admitting the fact presuit or the plaintiff learning that information during discovery."  *Gonzalez*, 2018 WL 4217065, at \*7.

Neither of the cases cited by Defendants suggest that a contrary holding is appropriate. The first case, *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1308 (S.D. Fla. 2016), was decided at the summary judgment stage.  The court reached the holding, inapposite here, that allegations that plaintiff "heard an autodialer" when she answered the phone were insufficient to create a genuine dispute of material fact where defendant submitted testimony it did not use auto dialers and that all calls were dialed manually.  *Id.*  And in the second case, *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla 2012), the plaintiff alleged "no facts whatsoever about any automated or pre-recorded calls Defendant allegedly made," which, as Defendants concede, is not the case here.

Finally, Defendants contend that the fact that Plaintiff's attorney has filed complaints in other cases "with nearly (and often almost entirely) identical allegations relating to the same calling methods Plaintiff contends were used in this case" proves that "Plaintiff's ATDS allegations in *this* case are merely conclusory."  Doc. 10 at 16-17 (emphasis in original).  This argument is nonsensical.  First, as discussed above, the allegations in this case are not identical to those made in the other cases brought by Plaintiff's attorney.  Further, it is entirely believable that in each case brought by Plaintiff's attorney, the recipient of the telemarketing calls at issue heard "a strange silence or pause of 'dead air' and/or strange clicking sounds before a live human telemarketer came on the line" – indeed, it seems fair to say that each of us has experienced this very phenomenon, repeatedly, on our own cellular phones.  In short, Plaintiff's description of the

calls that he received are neither conclusory on their face nor made so by their similarity to any such description in complaints in other cases.

As the Court thus disagrees that Plaintiff has failed to satisfy the first and third elements of his Section 277(b) claim, the Court declines to dismiss that claim pursuant to Rule 12(b)(6).

      D.    <u>Plaintiff's Claim Under Section 277(c) of the TCPA</u>

Plaintiff also alleges that Defendants violated Section 227(c)(5) of the TCPA, which allows a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations. 47 U.S.C. § 227(c)(5). In support of his Section 277(c) claim, Plaintiff alleges that "Defendants or Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff more than once within 12 months despite the fact his phone number Defendants or their agents called has been continuously listed on the Registry at all relevant times." Doc. 8 ¶ 68. Plaintiff further alleges that he uses that phone number "for his personal or residential purposes." *Id.* at 9. Based on these allegations, the Court infers that Plaintiff bases his Section 277(c) claim on Defendants' alleged violation of 47 C.F.R. Section 64.1200(c), which prohibits telephone solicitations to residential telephone subscribers who are registered on the national do-not-call registry. Defendants argue that this claim fails for three reasons, none of which the Court finds availing.

First, as they did with regard to Plaintiff's Section 277(b) claim, Defendants contend that Plaintiff has failed to adequately plead that CHW or Mandalawi made the telephone calls at issue because the Amended Complaint is devoid of allegations either that CHW or Mandalawi initiated the calls or were in a principal/agency relationship with the individuals who did so. Doc. 10 at 18. For the same reasons noted above, the Court agrees that neither CHW nor

Mandalawi can be held directly liable for making the calls but nonetheless finds that Plaintiff's allegations are sufficient to plead vicarious liability as to each of them.

Next, Defendants contend that Section 277(c) does not apply to the receipt of calls on a cellular phone because the applicable regulations only apply to calls made to a "residential telephone subscriber," defined as a traditional landline in a residence.  *Id.*  "However, while 47 C.F.R. § 64.1200(c) states that it applies to calls to 'a residential telephone subscriber,' the regulations go on to unambiguously provide that '[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers,' as described in a 2003 FCC Order."  *Smith v. Truman Rd. Dev., LLC*, No. 18-cv-670, 2020 WL 2044730, at *10 (W.D. Mo. Apr. 28, 2020) (quoting 47 C.F.R. § 64.1200(e) (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003)).  Defendants fail to address Section 64.1200(e) or the 2003 FCC Order, which finds that it is "more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections."  *Smith*, 2020 WL 2044730, at *10 (citation omitted).   As the *Smith* court noted, "[o]ther courts that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d)."  *Id.* (citing *Stevens-Bratton v. TruGreen, Inc.*, No. 15-2472, 2020 WL 556405, at *4 (W.D. Tenn. Feb. 4, 2020) ("A cellular telephone can satisfy the residential telephone subscriber element of § 64.1200(c) & (d)"); *Izor v. Abacus Data Sys., Inc.*, No. 19-cv-1057, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) (same); *Hodgin v. Parker Waichman Llp*, No. 14-cv-733, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) ("[T]he FCC has been clear in interpreting 'residential subscriber' to include cell phones.").   As did the court in *Smith*, this Court agrees and finds that "[a] cell phone user can

qualify as a residential telephone subscriber under 47 C.F.R. § 64.1200(c)." *Id.*

Finally, Defendants contend that a Section 277(c) claim only "relates to a marketer's duty to prepare internal "Do Not Call" ("DNC") policies to receive and implement affirmative DNC requests by consumers," and that Plaintiff's claim fails because "he does not allege that CHW Defendants failed to honor an affirmative DNC request he made to the CHW Defendants or that he even made such a request." Doc. 10 at 18-19. This argument ignores the plain language of 47 C.F.R. Section 64.1200(c), which states in relevant part that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Plaintiff may properly base his Section 277(c) claim on a violation of this regulation, and has done so here by alleging that Jane Does made telephone solicitations on Defendants' behalf more than once within 12 months to his phone number that was registered on the national do-not-call registry. *Smith*, 2020 WL 2044730, at *10 (finding that plaintiff stated a claim under Section 277(c) where he alleged that he received more than one telephone call within a twelve-month period in violation of 47 C.F.R. § 64.1200(c)).

To be sure, a plaintiff alternatively could base a Section 277(c) claim on a violation of Section 64.1200(d), a separate subdivision of the relevant regulation, which imposes "minimum procedures for maintaining a do-not-call list that apply to all calls—live or automated—initiated for telemarketing purposes to residential telephone subscribers." *Strange v. Doe #1*, No. 19-cv-1096, 2020 WL 2476545, at *3-4 (W.D. La. May 12, 2020). And in that case, the plaintiff would need to allege facts to demonstrate how *that subsection* was violated, such as by stating "that he made an affirmative request" for the defendants "to stop calling him and to put him on a

company specific do-not-call list," or that he "request[ed] a copy of [the defendant's] do-not-call procedures." *Id.* Because Plaintiff is not basing his claim on Section 64.1200(d), but rather on Section 64.1200(c), he need not make allegations to demonstrate how Section 64.1200(d) was violated, so long as he has made allegations to demonstrate how Section 64.1200(c) was violated, which he has done. Accordingly, Defendants have provided no valid basis for the Court to dismiss Plaintiff's 277(c) claim pursuant to Rule 12(b)(6).

     E.    <u>Plaintiff's State Law Claims</u>

Plaintiff alleges claims under the UPA, in addition to common law claims of trespass to chattels and conspiracy. As an initial matter, as they did with Plaintiff's TCPA claims, Defendants argue that these state law claims fail because Plaintiff has not alleged that CHW and Mandalawi are vicariously liable for the calls made by Jane Does. For the reasons set forth above, the Court declines to adopt this position, and instead finds that Plaintiff has adequately alleged that, for purposes of New Mexico law, Defendants are vicariously liable for the subject calls. *See Mohon*, 2020 WL 1332376, at * 6. Defendants' individual arguments as to each of Plaintiff's state law claims are addressed herein.

     1.    <u>Plaintiff's UPA Claims</u>

Section 57-12-22(B)(1) of the UPA prohibits the "solicitation of goods or services . . . without disclosing within fifteen seconds of the time the person being called answers the name of the sponsor and the primary purpose of the contact." Section 57-12-22(C)(1) of the UPA makes it "unlawful for a person to . . . make a telephone solicitation of a residential subscriber whose telephone number has been on the national do-not-call registry, established by the federal trade commission, for at least three months prior to the date the call is made." A "residential subscriber" is defined as "a person who has subscribed to residential telephone service from a

local exchange company or other persons living or residing with such person." N.M. Stat. Ann.

§ 57-12-22(D)(3). Relevant to these provisions, Plaintiff alleges that "Defendants or

Defendants' agents on Defendants' behalf made telephone solicitations to Plaintiff [at his cellular

number which he uses for personal or residential purposes] more than once within 12 months

despite the fact his phone number Defendants or their agents called has been continuously listed

on the Registry at all relevant times," and that during the July 1, 2019 call, Plaintiff had a

conversation with the initial telemarketer "for over 15 seconds," but at no time during the call

did the telemarketer identify the seller or sponsor of the call as anything other than "Support

First," which is a fake name. *Id.* ¶¶ 14, 68.

 As they did with Plaintiff's TCPA claim under Section 277(c), Defendants argue that

these allegations are insufficient to establish a violation of Section 57-12-22(B)(1) or (C)(1)

because those provisions of the UPA apply only to solicitations made to "residential (*i.e.*, land

lines)." Doc. 10 at 20. In support of this argument, Defendants contend that other provisions of

the UPA make clear that the Legislature intended to exclude from this provision cell phone users,

regardless of whether they use their cell phones for residential purposes, which Plaintiff alleges

that he does here. *Id.* at 21. But none of the provisions cited by Defendants address this issue or

provide any insight into whether the Legislature would consider an individual who uses a cellular

phone for personal or residential purposes to be a "residential subscriber" for purposes of Section

57-12-22(B)(1) or (C)(1).

 Although New Mexico courts have not yet addressed the reach of Section 57-12-22(B)(1)

or (C)(1), this Court in *Dendy* "applied the TCPA's standards to the NMUPA and concluded that

the plaintiff stated a plausible claim, where the defendant called unsolicited the plaintiff's

cellular telephone with a prerecorded or artificial message, and the plaintiff was listed on the

National Do Not Call Registry." *Agentra*, 400 F. Supp. 3d at 1232 (citing *Dendy*, 2019 WL 719762, at *4 (citing N.M. Stat. Ann 57-12-14 for the proposition that "[it] is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts.")).  In *Agentra*, this Court agreed, predicting that the Supreme Court of New Mexico would conclude that Section 57-12-22(B)(1) and (C)(1) "protect[] wireless telephone users" and "would permit wireless telephone users to bring claims" under those provisions.  400 F. Supp. 3d at 1233.  This Court, too, agrees and in keeping with *Dendy* and *Agentra*, finds as follows:  (1) Plaintiff, who alleges that he received a telephone call on July 1, 2019 "during which the caller did not provide the call's [real] sponsor within the first fifteen seconds after [he] answered the call . . . [may] proceed under § 57-12-22(B)(1)"; and (2) Plaintiff, who alleges that he "subscribes [his] cellular telephone number to the National Do Not Call Registry, and that [he] received telephone solicitations . . . may proceed under § 57-12-22(C)(1)." *Id.* at 1245.

Defendants contend that Plaintiff gives no "indication of duration" of the calls that he received and does not allege that Jane Does "failed to provide the name of the sponsor or the purpose of the call within fifteen seconds," and thus that Plaintiff has failed to state a claim under Section 57-12-22(B)(1).  Doc. 10 at 23.  This, however, is not accurate.  As explained above, Plaintiff does allege that the July 1, 2019 call lasted for longer than fifteen seconds and that at no time did the telemarketer provide the name of any sponsor other than Support First, which he alleges to be a fake name.  Reading Plaintiff's allegations in the light most favorable to him, as this Court must do, these allegations are sufficient to state a claim under Section 57-12-22(B)(1).

Defendants also contend that Plaintiff's UPA claims fail because he did not allege "the necessary elements" of a UPA claim, namely that a seller knowingly made an "oral or written,

statement, visual description or other representation that was false or misleading . . . in connection with the sale, lease, rental or loan of goods or services."  Doc. 10 at 21-22.  This argument appears to misapprehend the UPA, which defines an "unfair or deceptive trade practice" in the disjunctive as *either* "an act specifically declared unlawful pursuant to the Unfair Practices Act,"  *or* "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person."  N.M. Stat. Ann. § 57-12-2(D).  Here, Plaintiff alleges that Defendants committed "an act specifically declared unlawful" under Section 57-12-22(B)(1) and (C)(1).  Accordingly, he need not allege the elements necessary to establish an unfair or deceptive trade practice when there has been no alleged "act specifically declared unlawful" pursuant to a specific provision of the UPA.  The Court, however, agrees that the Amended Complaint fails to state a UPA claim based on anything other than Section 57-12-22(B)(1) and (C)(1) and accordingly, Plaintiff may pursue his UPA claims on that basis only.

Next, Defendants argue that Section 57-12-22 "generally requires an automated telephone dialing or push-button or tone-activated address signaling system . . . and a pre-recorded message," and that because Plaintiff does not allege the use of a pre-recorded message, he cannot state a claim under Section 57-12-22(B)(1) or (C)(1).  Doc. 10 at 23.  Section 57-12-22(A) provides that "[a] person shall not utilize an automated telephone dialing or push-button or tone-activated address signaling system with a prerecorded message to solicit persons to purchase goods or services unless there is an established business relationship between the persons and the person being called consents to hear the prerecorded message."  Nowhere does

the UPA suggest that a prerecorded message is a prerequisite to establishing a claim under the separate subsections of (B)(1) or (C)(1).  The Court declines to read such a requirement into the statute.

Finally, Defendants argue that "Plaintiff seems to base his UPA claim entirely on Sections 310.4 and 310.3(b) of the [Telemarketing Sales Rule ("TSR")], even though he does not bring a separate TSR count."  Doc. 10 at 23.  While the Court does not agree that the entirety of Plaintiff's UPA claim is based on the TSR, as his allegations state a claim for a violation of Section 57-12-22(B)(1) and (C)(1), the Court finds that the Amended Complaint is vague and confusing in its disjointed references to the TSR.  Accordingly, the Court finds that Plaintiff fails to state a UPA claim based on the TSR and will not be permitted to proceed on his UPA claim on any such basis.  Plaintiff's UPA claims thus will not be dismissed but will be limited as set forth herein.

### 2.   Plaintiff's Common Law Trespass to Chattels Claim

Plaintiff summarily claims that he is suing "Defendants for trespass to chattels."  Doc. 8 ¶ 70.  Defendants argue that "merely calling a person's cell phone, without more as Plaintiff alleges here, does not constitute an actionable trespass to chattels in New Mexico," which instead "requires physical contact or entry by the defendant."  Doc. 10 at 24-25.  In *Agentra*, the Court addressed and rejected this argument.  As the Court explained, "[t]respass to chattel is the intentional use or interference with a chattel which is in the possession of another, without justification."  400 F. Supp. 3d at 1238 (citation omitted).  This tort "requires an intention to act for the purpose of interfering with the chattel or with knowledge that a disturbance thereof is substantially certain to occur."  *Id.* (citation omitted).  "No New Mexico court has addressed whether the tort pertains to interference with or unwarranted calls on cellular telephones."  *Id.*

Other courts to address this issue, however, "have recognized that unauthorized and unwanted electronic communications may establish common-law trespass-to-chattels claims." *Id.* (collecting cases).

The *Agentra* court "predict[ed] that the Supreme Court of New Mexico would adopt the approach permitting more liberal recovery and recognize a trespass-to-chattels claim on allegations that a plaintiff received unwanted electronic communications." *Id.* Based on this prediction, the *Agentra* court found that the plaintiff stated a trespass to chattels claim where she alleged that the defendants "called her cellular telephone repeatedly with unwanted calls," even though the defendants "did not physically intervene with the [plaintiff's] cellular telephone." *Id.* at 1245.

There is no reason to deviate from this conclusion here. In keeping with *Agentra*, the Court finds that Plaintiff's allegations that Defendants called his cellular phone repeatedly with unwanted calls, causing him aggravation, wasting his time, invading his privacy, disrupting his days and costing him electricity to recharge his phone, Doc. 8 ¶ 37, are sufficient to state a trespass to chattels claim.

3.      Plaintiff's Common Law Civil Conspiracy Claim

Plaintiff, also summarily, claims that he is suing Defendants "for their civil conspiracy to direct an illegal telemarketing campaign into the State of New Mexico and to Plaintiff in particular." Doc. 8 ¶ 70. "A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Agentra*, 400 F. Supp. 3d at 1239 (citation omitted). "Civil conspiracy consists of showing (1) that a conspiracy between two individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a

29

result of such acts." *Id.* (citation omitted).  "A civil action is not actionable unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone." *Id.*

Here, Plaintiff fails to allege any facts to demonstrate the elements of a conspiracy between CHW and anyone else.  Specifically, Plaintiff does not allege a "combination" by two or more persons, or that the calls to Plaintiff were made pursuant to any such combination.  Even reading the allegations in the light most favorable to Plaintiff, they fail to raise to a plausible level the contention that Defendants combined with any other persons to violate the TCPA, the UPA, or New Mexico common law.  Accordingly, Plaintiff's civil conspiracy claim will be dismissed pursuant to Rule 12(b)(6).

III.   Standing

In the alternative to their 12(b)(6) motion, Defendants argue that the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of standing.  "Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane County Utah v. United States*, 928 F.3d 877, 888 (10th Cir. 2019).  In particular, "[t]he element of traceability requires the plaintiff to show that the defendant is responsible for the injury, rather than some other party not before the court." *Strojnik v. Albuquerque Boca Hotel, LP*, No. 20-cv-00843, 2020 WL 7047647, at *1 (D.N.M. Dec. 1, 2020).

Here, Defendants argue that Plaintiff fails to allege facts to establish the second and third elements, namely, that his injury is traceable to or redressable by CHW or Mandalawi.  Doc. 10 at 26.  This argument, however, hinges on Defendants' previous, and already rejected, contention

that Plaintiff did not sufficiently allege facts connecting CHW or Mandalawi to the subject

telephone calls.  As discussed above, read together, Plaintiffs' allegations are sufficient to

plausibly state that Jane Does were acting as agents of CHW and Mandalawi when they made the

calls to Plaintiff, and thus also plausibly connect CHW and Mandalawi to the calls.  Accordingly,

for the same reasons that Defendants' arguments regarding vicarious liability fail, so too do their

arguments regarding standing.  As Defendants have failed to demonstrate that Plaintiff lacks

standing, there is no basis to dismiss the Amended Complaint pursuant to Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, the Court holds as follows:  Mandalawi will not be dismissed

from this action for lack of personal jurisdiction; Plaintiff's TCPA claims will not be dismissed;

Plaintiff's UPA claims will not be dismissed, but he will be permitted to proceed on those claims

only on the basis that Defendants violated Section 57-12-22(B)(1) and (C)(1); Plaintiff's trespass

to chattels claim will not be dismissed; Plaintiff's civil conspiracy claim will be dismissed; and

the Amended Complaint will not be dismissed for lack of subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that the Defendants' Joint Motion to Dismiss

Plaintiff's Amended Complaint [Doc. 10] is **DENIED in part and GRANTED in part,**

consistent with this Memorandum Opinion and Order**.**

DATED this 16th day of December 2020.

_____

MARTHA VÁZQUEZ

United States District Judge